IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SUSANA AQUECHE, | * |
| *Plaintiff,* | * |
| v. | |
| | *   Civil Case No: 1:24-cv-01395-JMC |
| SVAP PASADENA CROSSROADS, LLC, et al., | * |
| *Defendants.* | * |
| | * |

* * * * * * * * * * * * * * * *

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff, Susana Aqueche, filed the present lawsuit against Defendants[1] SVAP II Pasadena Crossroads, LLC ("SVAP"), Sterling Retail Services, Inc. ("Sterling Retail"), Sterling Retail Services Mid-Atlantic, LLC ("Sterling Mid-Atlantic"), and The Sterling Organization, LLC ("The Sterling Organization") in the Circuit Court of Anne Arundel County, Maryland, on December 18, 2023. (ECF No. 1 at 1).[2] Defendants removed the matter to this Court on May 14, 2024. *Id.* Plaintiff asserts a premises liability claim against all Defendants based on injuries she sustained after slipping on a patch of ice in the parking lot of a Hobby Lobby. (ECF No. 4). Currently pending before the Court is Defendants' jointly filed Motion for Summary Judgment, (ECF No. 50), and Plaintiff's Motion for Leave to file a surreply, (ECF No. 55). The motions are fully briefed, (ECF

---

[1] Plaintiff originally also named Paramount Crossroads at Pasadena, LLC ("Paramount Crossroads"), Sterling Organizational Systems, LLC ("Sterling Organizational Systems"), and Hobby Lobby Stores, Inc. ("Hobby Lobby"), as defendants in this action. (ECF No. 1). Paramount Crossroads and Sterling Organizational Systems were dismissed by joint stipulation while the matter was still pending in Anne Arundel County state court. *Id.* at 2. This Court granted Hobby Lobby summary judgment on August 12, 2024, and dismissed all claims against it as a matter of law. (ECF No. 32).

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document is not electronically stamped, the citation is instead to the number at the bottom of the page.

No. 51; ECF No. 53),[3] and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth herein, Defendants' Motion for Summary Judgment, (ECF No. 50), shall be GRANTED in part and DENIED in part. Plaintiff's Motion for Leave to file a surreply, (ECF No. 55), shall also be GRANTED in part and DENIED in part.

I. BACKGROUND

a. **Factual Background**[4]

On the morning of December 26, 2020, Plaintiff and her son, Victor Aqueche, drove to purchase a Christmas tree from the Hobby Lobby after-Christmas sale. (Defs.' Mot. Summ. J. Ex. 5, Susana Aqueche Dep. Tr. at 45:5-18, ECF No. 50-7). Plaintiff had never been to that shopping center before. *Id.* at 46:7-11. When they arrived at approximately 9:00-9:30am, Victor parked the vehicle with the passenger side facing the Hobby Lobby store. *Id.* at 47:6-13, 51:15-20. Plaintiff testified that it snowed lightly at Victor's house the day prior, but that on December 26, 2020 she did not see any frost or accumulation on the car or on the ground. *Id.* at 48:11-50:4. Upon exiting the vehicle in the Hobby Lobby parking lot, Plaintiff did not see any snow or ice. *Id.* at 51:20-52:9 ("Q: Do you remember if there was any ice in the parking lot? A: I didn't look for the ice. Like I said, no snow on the road – no snow on the parking lot, so I didn't see – no.").

Plaintiff and Victor walked approximately ten to twelve steps towards the Hobby Lobby store from the parking lot when Victor realized that he had left his wallet in the car. *Id.* at 52:10-54:4. While Victor collected his wallet from the car, Plaintiff slipped and fell on what she describes as "black ice" which she could not see. *Id.* at 54:22-55:4. Victor testified that he didn't see Plaintiff's fall, but witnessed the immediate aftermath and observed her "going in and out of

---

[3] Defendants did not file an opposition to Plaintiff's Motion for Leave to file a surreply, and the deadline to do so has passed. *See* Loc. R. 105.2(a) (D. Md. 2023).
[4] The following facts are undisputed unless specifically noted otherwise.

2

consciousness[.]" (Defs.' Mot. Summ. J. Ex. 6, Victor Aqueche Dep. Tr. at 50:6-19, ECF No. 50-8). Victor helped Plaintiff back to his car with the assistance of another shopper, went inside to alert the Hobby Lobby manager of what had occurred, and then drove Plaintiff to an Urgent Care across the street. *Id.* at 71:10-21, 78:3-11. Victor took several photographs of the scene, one of which was taken 7-10 minutes after Plaintiff's fall, and others which he took when he returned an hour later to complete an incident report. *Id.* at 57:19-58:12; Ex 9, ECF No. 50-11.

Defendants are related business entities, and the relationships between them, as well as their relationship to the premises at issue, are explained as follows in each of their Answers to Interrogatories:

> SVAP II Pasadena Crossroads, LLC, was the owner of the property on the date of the occurrence. Sterling Retail Services, Inc. was the operations arm that manages the property owned by SVAP at the time of the loss. [] This party, Sterling Retail Services Mid-Atlantic, LLC, is a part of the Sterling Organization [and] acted as the real estate broker for SVAP in relation to the commercial lease transaction with Hobby Lobby. The Sterling Organization, LLC is the parent company of SVAP and Sterling Retail Services, Inc. The Sterling Organization is a private equity firm that focuses on real estate investment. It was not the owner of the Property, and did not manage the Property.

*Id.* at Ex. 1 at 4, ECF No. 50-3; Ex. 2 at 4, ECF No. 50-4; Ex. 3 at 4, ECF No. 50-5; Ex. 4 at 4, ECF No. 50-6. Plaintiff adopted this paragraph by reference in her Opposition to Defendants' Motion for Summary Judgment. (ECF No. 51-1 at 2).

### b. **Procedural History**

Plaintiff filed the instant lawsuit in the Circuit Court of Anne Arundel County on December 21, 2023, asserting a claim for negligence against SVAP, Sterling Retail, Sterling Mid-Atlantic, The Sterling Organization, Paramount Crossroads, Sterling Organizational Systems, and Hobby Lobby. (ECF No. 4). The parties jointly stipulated to the dismissal of Plaintiff's claims against Paramount Crossroads and Sterling Organizational Systems on April 24, 2024. (ECF No. 6; ECF

3

No. 7). On May 14, 2024, the remaining Defendants removed the action to this Court. (ECF No. 1). Hobby Lobby moved for summary judgment on June 17, 2024 on the basis that it was not responsible for maintaining the parking lot where Plaintiff fell. (ECF No. 28-1). The motion went unopposed. This Court granted Hobby Lobby's Motion for Summary Judgment on August 12, 2024 and dismissed all claims against Hobby Lobby as a matter of law. (ECF No. 32).

Currently pending before the Court is a Motion for Summary Judgment filed by the remaining defendants: SVAP, Sterling Retail, Sterling Mid-Atlantic, and The Sterling Organization. (ECF No. 50). They move for summary judgment on the following grounds: (1) Sterling Mid-Atlantic did not owe Plaintiff a duty of care; (2) The Sterling Organization did not owe Plaintiff a duty of care; (3) the area where Plaintiff fell did not have any black ice, but was instead an open and obvious danger; and (4) Plaintiff was contributorily negligent by failing to avoid an open and obvious condition. (ECF No. 50 at 3). Also pending is Plaintiff's Motion for Leave to file a surreply. (ECF No. 55).

## II.   LEGAL STANDARD

### a. Leave to File Surreply

The Local Rules provide that "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Loc. R. 105.2(a) (D. Md. 2023). A surreply may be allowed when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Kiddie Acad. Domestic Franchising, LLC v. Wonder World Learning, LLC*, No. ELH-17-3420, 2020 WL 4338891, at *15 (D. Md. July 27, 2020) (quoting *Clear Channel Outdoor, Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 529 (D. Md. 2014)); *see also Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 663 (D. Md. 2013). However, "a surreply is not generally permitted where the reply is responsive to an

issue raised in the opposition." *Id.* (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)).

### b. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III. ANALYSIS

### a. Maryland Tort Law Governs in this Diversity Action

The parties agree, as does the Court, that substantive Maryland law controls in this diversity case. "A federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). When determining which jurisdiction's tort law governs in a particular matter, Maryland courts apply the *lex locti delicti* principle, which provides that "the substantive rights of the parties…are to be determined by the law of the state in which the alleged tort took place." *Marcus v. Tucker*, No. DKC 23-892, 2024 WL 2728513, at *2 (D. Md. May 28, 2024) (quoting *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 745 (2000)). As such, because Plaintiff alleges her injury occurred in Maryland, the Court will analyze Plaintiff's claims under Maryland tort law.

  b. **Plaintiff's Motion for Leave to File a Surreply Shall be Granted in Part and Denied in Part**

Plaintiff moves for leave to file a "Reply to Defendants' Reply to Plaintiff's Opposition" because Defendants "present several new subjects and responses which required Plaintiff to respond and clarify" in their Reply. (ECF No. 55 at 1). Plaintiff contends that "[w]ithout the ability to respond, the Defendant[s] would be permitted to have reserved their points and arguments which were not presented in the original motion until after it is too late for the Plaintiff to respond and thereby preclude the Plaintiff from a fair hearing of the underlying matter." *Id.* at 2. As previously stated, *see* Supra Sec. II(a), a surreply may be permitted where the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Kiddie Acad. Domestic Franchising*, 2020 WL 4338891 at *15 (citation omitted). The Court has reviewed Plaintiff's proposed surreply and concludes that while some sections contest issues which were raised in Defendants' Reply for the first time, other sections address arguments and evidence from Defendants' original Motion for Summary Judgment.

6

Specifically, Section I focuses on Defendants bearing the burden of proof on summary judgment, while Section II relates to Defendants' reliance on photographs of the Hobby Lobby parking lot to establish that the ice was open and obvious. (ECF No. 55-1 at 1-2). The photographs were attached to Defendants' Motion for Summary Judgment and discussed extensively throughout Defendants' motion. Any argument concerning the photographs, and certainly the burden of proof, could have and should have been raised in Plaintiff's opposition brief. However, the remaining Sections (Sections III – V) address Defendants' arguments that the Court may not properly consider Plaintiff's expert witness report and an incident report on summary judgment. *Id.* at 4-7. Defendants' arguments regarding these exhibits were raised for the first time in their Reply brief, and the Court will therefore permit Plaintiff to respond. Accordingly, the Court will strike Sections I and II of Plaintiff's surreply, but will consider Sections III-V in its summary judgment determination, as well as the accompanying exhibits, which all relate to the arguments raised in Sections III-V.

    c. **All Claims Against Sterling Mid-Atlantic and The Sterling Organization Shall be Dismissed**

Defendants move for summary judgment in favor of Sterling Mid-Atlantic and The Sterling Organization on the grounds that neither entity owed Plaintiff a duty of care. (ECF No. 50 at 6-7). Defendants explain that Sterling Mid-Atlantic served as the real estate broker for the purchase of the property where Plaintiff's injury allegedly occurred, and that The Sterling Organization is merely the parent company of SVAP and Sterling Retail. *Id.* at 7. Also relevant is the fact that SVAP admits ownership of the premises, and Sterling Retail admits "its role as the entity responsible for property management of the premises." *Id.* Plaintiff does not dispute these

representations, and agrees to the voluntary dismissal of Sterling Mid-Atlantic and The Sterling Organization. (ECF No. 51-1 at 3).

The Court agrees that Sterling Mid-Atlantic and The Sterling Organization are not proper defendants in this action, as they had no role in the possession or control of the parking lot at the time of Plaintiff's purported injury. *See Duncan-Bogley v. United States*, 356 F. Supp. 3d 529, 535 (D. Md. 2018) ("The duty to an invitee is imposed on owners, tenants, and occupiers of land, those having sufficient possession and control to be answerable to others for its condition.") (quoting *Leatherwood Motor Coach Tours Corp. v. Nathan*, 579 A.2d 797, 802 (Md. Ct. Spec. App. 1990)). Defendants' Motion for Summary Judgment (ECF No. 50) shall therefore be granted to the extent that it is based on claims against Sterling Mid-Atlantic and The Sterling Organization, and judgment shall be entered in the favor of Sterling Mid-Atlantic and The Sterling Organization as to all claims made against them.

### d. There Remains a Genuine Dispute of Material Fact as to Whether the Ice was an Open and Obvious Danger

As an initial matter, the Court will address Defendants' contention that Plaintiff's Opposition is supported by inadmissible evidence that may not be considered in the context of a summary judgment motion. (ECF No. 53 at 3). Defendants first maintain that two of Plaintiff's exhibits—a customer incident report form filled out by Plaintiff's son (Exhibit A), and an incident reported completed by SVAP's corporate representative, Rachel Williams (Exhibit B)—are hearsay and therefore may not be considered by the Court. *Id.* at 3-4. They further argue that the report of Plaintiff's expert Richard Balgowan is inadmissible because Mr. Balgowan's certification does not satisfy the requirements of Federal Rule 56(c), and because his opinions are speculative and not helpful to the finder of fact. *Id.* at 4-5. Plaintiff does not address Defendants' arguments

with respect to Exhibit A, but argues that Exhibit B is admissible as an opposing party's statement under Federal Rule of Evidence 801(d)(2), and is further admissible under the records of a regularly conducted activity exception to hearsay pursuant to Federal Rule of Evidence 803(6). (ECF No. 55-1 at 6-7). With respect to Mr. Balgowan's report, Plaintiff points to Mr. Balgowan's certification that the "report is an accurate statement of all [his] opinions, and the basis and reasons for them, to which [he] will testify under oath" and additionally attached a declaration executed by Mr. Balgowan affirming, under penalty of perjury, "that the matters set forth in [his] report are those which [he] will testify to at trial under oath and are based upon [his] personal knowledge as well as [his] experience and training" to her Surreply. *Id.* at 4, 9. Plaintiff cites to Mr. Balgowan's qualifications and further maintains that Mr. Balgowan's report assists the trier of fact in "understanding how 'black ice' is formed, why it is likely that the hazard in this incident was 'black ice,' and [] is consistent with the testimony of Ms. Aqueche that it was 'black ice' which existed and caused her to fall." *Id.* at 6.

"The court and the parties have great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721 (3d ed. 1998)). "The court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where 'the party submitting the evidence show[s] that it will be possible to put the information … into an admissible form.'" *Id.* (quoting 11 James W. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed. 2015)). Put simply, the operative question is whether the information submitted has a pathway to admissibility, not whether it is admissible in its current form.

Dealing first with Defendants' objections to Mr. Balgowan's report, the Court concludes that the anticipated testimony of a properly designated expert as contained in their report certainly has a non-speculative pathway to trial admissibility. Not only does Mr. Balgowan certify that he will testify to the contents of his report at trial, but he also affirms the same in the affidavit attached to Plaintiff's surreply. (ECF No. 55-1 at 9). This permits the Court to consider the report in the context of Defendants' Motion for Summary Judgment. *Compare Humphreys & Partners Architects*, 790 F.3d at 539 (finding no error in district court's consideration of experts' reports where appellees submitted declarations "under penalty of perjury" attesting that the experts "would testify to the matters set forth" in their reports and explaining that "[s]ubsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment.") (quoting *DG & G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 826 (8th Cir. 2009) (citation omitted)).

Regarding Defendants arguments that Mr. Balgowan's report suffers from defects in its reliability and methodology, the Court concludes that Mr. Balgowan's report is sufficiently reliable so as merit consideration on summary judgment. Expert testimony is governed by Federal Rule of Evidence 702, which permits testimony where the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" provided that the opinion is "based on sufficient facts or data," "is the product of reliable principles and methods," and the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Fourth Circuit has explained:

> In assessing the admissibility of expert testimony, a district court assumes a "gatekeeping role" to ensure that the "testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. The district court's inquiry is a "flexible one," whose focus "must be solely on principles

> and methodology, not on the conclusions that they generate." *Id.* at 594–95, 113 S.Ct. 2786. Daubert 's design is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). A district court may consider a wide variety of factors to evaluate the reliability of expert testimony, including "testing, peer review, error rates, and 'acceptability' in the relevant scientific community." Id. at 141, 119 S.Ct. 1167.

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. and Prods. Liability Litig.*, 892 F.3d 624, 631 (4th Cir. 2018). Additionally, the court's role in rejecting expert testimony is not a replacement for the adversary system, and the exclusion of expert testimony is therefore the exception rather than the rule. *Id.* (citing *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013)).

Here, Mr. Balgowan bases his findings on over forty years of experience in snow and ice control, as well as a review of the weather data for the relevant timeframe and a site visit to the Hobby Lobby parking lot. (Pl.'s Opp'n Ex. C at 4, ECF No. 51-5). Per his report, Mr. Balgowan is "a licensed professional engineer in twelve (12) states, a licensed professional planner, a certified public manager, a certified public works manager, a public works leadership fellow, a certified snow and ice control manager and a certified asphalt pavement technician[.]" *Id.* Further, his opinions are helpful to the trier of fact by providing an understanding of how black ice is formed, as well as the likelihood of black ice forming in the Hobby Lobby parking lot on December 26, 2020. The Court therefore finds that Mr. Balgowan's report may be considered in evaluating Defendants' Motion for Summary Judgment.

As for Defendants' remaining challenges, the Court declines to make a finding as to the admissibility of Exhibits A and B at this stage in the litigation. In any case, as Defendants identify, the portions of Exhibits A and B which Plaintiff cites to are actually descriptions of the incident provided by Plaintiff and/or her son, which are also reflected in their respective deposition

11

transcripts and could be admissible at trial through their testimony. *See, e.g.*, Pl.'s Opp'n Ex. B at 1, ECF No. 51-4 ("Statement by third party as to cause of incident: She fell on black ice in parking lot."). While Defendants may have valid arguments regarding the admissibility of Exhibits A and B at trial, the Court will simply refer to the deposition transcripts of Plaintiff and her son for their respective descriptions of the incident in evaluating Defendants' Motion for Summary Judgment.

Turning finally to Defendants' substantive arguments for summary judgment, the Court holds that there remains a genuine dispute of material fact regarding whether the ice Plaintiff slipped on was an open and obvious danger. As this Court recently explained in *Palmer v. Brown*:

> An open and obvious condition is one where the condition and risk are 'recognizable to a person in the position of a visitor, exercising ordinary perception, intelligence, and judgment." *Bogley*, 356 F. Supp. at 540 (quoting *Coleman*, 369 Fed. App'x at 459). As relevant here, the Maryland Court of Appeals has "noted, with approval, the proposition formulated by Prosser and Keeton that 'there are certain risks which anyone of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects ... and doubtless many others.'" *C & M Builders, LLC v. Strub*, 420 Md. 268, 295 (2011) (emphasis added) (quoting *Morgan State Univ. v. Walker*, 397 Md. 509, 515 (2007)).
>
> When faced with such "open and obvious dangers, invitees are expected to exercise ordinary caution and judgment that will permit them to observe and avoid such dangers." *McManus*, 2019 WL 1746696, at *3. "This includes the duty to look and see what is around the invitee." *Coleman*, 369 Fed. App'x at 462.

*Palmer v. Brown*, No. 19-cv-02267, 2020 WL 1812865, at *3 (D. Md. April 9, 2020). The question of whether a condition is open and obvious is typically reserved for the factfinder, but "where it is clear that any [reasonable] person [in Plaintiff's position] must have understood the danger, the issue may be decided by the court." *Id.* (first citing *C & M Builders, LLC v. Strub*, 420 Md. 268, 298 (2011), then citing *Bogley*, 356 F. Supp. at 540). In *Palmer*, the undersigned granted summary judgment to the defendant on the basis that the ice the *Palmer* plaintiff slipped on *was* an open and obvious danger. *Id.* The undersigned explained that "[i]ce is a danger to which reasonable adults

12

are aware, and…where there is nothing to obstruct or interfere with one's ability to see such condition, the owner or occupier is justified in assuming that a visitor will see it and realize the risk involved." *Id.* Defendants cite frequently to *Palmer* in their Motion for Summary Judgment, arguing that the facts in the instant case are analogous to *Palmer*. The Court disagrees.

In *Palmer*, the plaintiff was aware of the icy condition of the driveway which she eventually slipped on. Prior to driving to the location where she was eventually injured, she had shoveled her own driveway to remove the ice and snow that had fallen overnight, she first walked on grass alongside the driveway to avoid the ice, and she admitted to observing ice on the driveway before and after she fell. *Id.* at *1. By contrast, Plaintiff in this matter testified that she did not see any frost or accumulation on her son's car or on the ground the morning of December 26, 2020. (Defs.' Mot. Summ. J. Ex. 5, Susana Aqueche Dep. Tr. at 48:11-50:4, ECF No. 50-7). She did not observe any snow or ice in the Hobby Lobby parking lot. *Id.* at 51:20-52:9. And she clearly testified that she slipped on black ice which she could not see. *Id.* at 54:22-55:4; compare *Palmer*, 2020 WL 1812865 at *3 ("[W]here there is nothing to obstruct *or interfere with one's ability to see such condition*, the owner or occupier is justified in assuming that a visitor will see it and realize the risk involved) (emphasis added). Plaintiff's son, Victor, also testified that he did not observe water in the parking lot prior to the accident and believed it to be dry. (Defs.' Mot. Summ. J. Ex. 6, Victor Aqueche Dep. Tr. at 31:8-14, ECF No. 50-8). Plaintiff and Victor's accounts are further corroborated by Mr. Balgowan's expert report, which states that the weather patterns and condition of the parking lot were conducive to the formation of black ice on December 26, 2020. (Pl.'s Opp'n Ex. C at 43, ECF No. 51-5).

Additionally, while Defendants repeatedly maintain that the photographs Victor took of the parking lot plainly show that the ice was not black ice and can be clearly seen, the Court does not

agree that the photos definitively establish the ice to be an open and obvious danger. It is true that ice is visible in the first photograph, which was taken 7-10 minutes after Plaintiff's fall, but it is certainly possible that photographing the ice from a certain angle made it more visible, or that the sun was reflecting off of it in a way which increased visibility when the photo was taken. (Defs.' Mot. Summ. J. Ex. 6, ECF No. 50-11). It does not prove with certainty that a reasonable person, standing where Plaintiff was standing just prior to her fall, could have observed the patch of ice. The photos taken by Victor when he later returned to the parking lot provide even less clarity, because by that time the lot had been salted and the ice at least somewhat melted, as evidenced by the tire tracks trailing water from the patch. *Id.*

Based on the evidence before the Court, it is possible that a jury might conclude that a reasonable person should have understood the danger of the ice, such that it posed an open and obvious danger and Plaintiff failed to exercise reasonable care by avoiding it. However, a jury might also reasonably conclude the opposite. Viewing the facts in the light most favorable to Plaintiff, the Court concludes that there is a genuine dispute of material fact regarding whether the ice was visible. Summary judgment is therefore not appropriate, and Defendants' Motion for Summary Judgment (ECF No. 50) will be denied.

## IV.   CONCLUSION

For the foregoing reasons, it is this 20th day of March, 2025, hereby ordered that:

1) Plaintiff's Motion for Leave to file a surreply (ECF No. 55) is GRANTED in part and DENIED in part; and

2) Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part; and

3) All claims against Defendants Sterling Retail Services Mid-Atlantic, LLC and The Sterling Organization, LLC, are dismissed as a matter of law; and

4) The Clerk is directed to terminate Defendants Sterling Retail Services Mid-Atlantic, LLC and The Sterling Organization, LLC, as parties in this action; and

5) The remaining parties shall file a joint status report within seven (7) days following the settlement conference before Judge Austin currently scheduled for July 24, 2025.

Dated: March 20, 2025

/s/
J. Mark Coulson
United States Magistrate Judge